# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **NANETTE LAURENCE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 3:06-00637 |
| | ) | **Judge Brown** |
| **ANTEON & BLANCHFIELD** | ) | |
| **HOSPITAL, ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

For the reasons explained below, the undersigned **RECOMMENDS** that Anteon Corporation's (Anteon) motion for summary judgment (Docket Entry No. 48) be **GRANTED**, and that this action be **DISMISSED** with prejudice.

## I. BACKGROUND

Before the Court is Aneton's motion for summary judgment. (Docket Entry No. 48) Anteon is the sole remaining defendant to this Title VII action, the complaint having been previously dismissed as to all other defendants. (Docket Entry No. 36, 46) The plaintiff has filed a response, and a revised response, to Aneton's motion for summary judgment.[1] (Docket Entry No. 57-58) The plaintiff also has filed two motions to "amend [her] response to the Discovery Request," that, given their content, the undersigned liberally construes, in part, as requests to supplement her two-part response to the motion for summary judgment. (Docket Entry No. 59-60) The alleged facts of this case remain as previously stated. (Docket Entry No. 31, pp. 1-2; No. 42, pp. 1-2)

---

[1] Although each is characterized as a response to Aneton's motion for summary judgment, Docket Entries 57 and 58 track Aneton's statement of undisputed material facts (Docket Entry No. 50), not Aneton's memorandum of law in support of its motion for summary judgment (Docket Entry No. 49). Notwithstanding this unorthodox method of responding to Anteon's motion of summary judgment, the plaintiff's "responses" are liberally construed as having been directed at Anteon's memorandum of law.

## II. ANALYSIS

### A. Summary Judgment Standard of Review

Summary Judgment is appropriate only where "there is no genuine issue as to any material fact . . . and the moving party is entitled to summary judgment as a matter of law." Rule 56(c), Fed. R. Civ. P., *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Newman v. Federal Express Corp.*, 266 F.3d 401, 404-05 (6th Cir. 2001). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Id.* at 249-50. Inferences from underlying facts "must be viewed in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001), *cert. denied*, 534 U.S. 896 (2001).

In considering whether summary judgment is appropriate, the court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon County*, 203 F.3d 426, 431 (6th Cir. 2000), *cert. denied*, 531 U.S. 875 (2000). If there is a genuine issue of material fact" then summary judgment should be denied. *Id.* However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 566 (6th Cir. 2001)(quoting *Celotex Corp.*, 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary

judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings. *Banks v. Wolfe County Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003)(citing *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). At the summary judgment stage, a plaintiff must adduce either direct or circumstantial evidence to prevail under Title VII. *See DiCarlo v. Potter,* 358 F.3d 408, 414 (6th Cir. 2004). In other words, to defeat summary judgment, the party opposing the motion "must present 'affirmative evidence' to support his/her position; a mere 'scintilla of evidence' is insufficient." *Bell v. Ohio State University*, 351 F.3d 240, 247 (6th Cir. 2003)(quoting *Anderson*, 477 U.S. at 252).

### B. Title VII Race Discrimination Standard of Review

Title VII prohibits an employer from "disciminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where no direct evidence is presented of race discrimination, the district court must apply the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), as modified by *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981). *Wright v. Murray Guard*, 455 F.3d 702, 706 (6th Cir. 2006). Under this framework, the plaintiff must first establish a *prima facie* case of discrimination, *Burdine*, 450 U.S. at 252-253, and if she succeeds, she is then entitled to a rebuttable presumption of discrimination. *DiCarlo*, 358 F.3d at 414 (citing

3

*Burdine*, 450 U.S. at 254).

To establish a *prima facie* case of race discrimination, the plaintiff must show that: 1) she is a member of a protected class; 2) she was subjected to adverse employment actions; 3) she was qualified for the position in question; and 4) she was replaced by someone outside the protected class, or similarly situated, non-protected employees were treated more favorably than she. *Vincent v. Brewer Col,* __ F.3d __, 2007 WL 4409791 at * 4 (6th Cir. 2007); *Wright*, 455 F.3d at 707. To compare her treatment to that of a non-protected employee, the plaintiff must show that she was similarly situated to the non-protected employee in all "relevant" respects. *Id.* at 710 (citing *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 353 (6th Cir. 1998)).

If a Title VII plaintiff establishes a *prima facie* case of discrimination, then the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp.,* 411 U.S. at 802; *Wright*, 455 F.3d at 706-707. If the defendant is able to establish a nondiscriminatory reason for the adverse action, then the burden shifts back to the plaintiff to prove that the reason offered by the defendant was a pretext for unlawful discrimination. *McDonnel Douglas Corp.* at 804; *Wright*, 455 F.3d at 707 (citing *DiCarlo*, 358 F.3d at 414-415). "Throughout this burden-shifting approach, the plaintiff bear[s] the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate." *Wright*, 455 F.3d at 707 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

The plaintiff's sole complaint is that she was discriminated against because of her race. (Docket Entry No. 1, ¶ 7, p. 3) However, because the plaintiff has provided no direct evidence of discriminatory conduct, the district court is required to analyze Aneton's motion for summary judgment under the standard set forth in *McDonnell Douglas Corp*.

4

## B. *Prima Facie Showing*

Anteon argues that the plaintiff cannot establish a *prima facie* case of race discrimination because she was not replaced by a person outside the protected class. (Docket Entry No. 49, ¶ II.C, p. 4) More particularly, Anteon argues that, although the plaintiff was temporarily replaced by a white female named Michelle Lee-Elza, Demetrice Mitchell, an African-American female, who was on leave at the time of the events that gave rise to this action, assumed the position when she returned from leave. In support of their argument, Anteon provides the sworn declaration of Edna O'Dell, the plaintiff's supervisor while she worked for Anteon. In her declaration, O'Dell states that:

> I initially replaced [the plaintiff] in the Credentials Office with a temporary employee named Michelle Lee-Elza, a white female. At that time Demetrice Mitchell, an African American female, was on a leave of absence with our company. When Ms. Mitchell returned from her leave she was to resume her full time status with our company. To fill her time, she was placed in the Credentials Office, replacing Ms. Lee-Elza, to work part time and than [*sic*] the rest of her hours were worked initially in the Call Center. After a short period of time, the Credentials office position was changed to full time and Ms[.] Mitchell then worked all of her hours in the Credential office . . . [for] 1½ years . . . ."

(Docket Entry No. 50, Ex. 2, ¶ 18, p. 4)

The plaintiff testified at her deposition that she "h[ad] [Lee-Elza's] name," and that she thought "they fell into some type of problem up there . . . [and] . . . they got rid of her as well." (Docket Entry No. 50, Ex. 1, pp. 112-113)[2] Although the plaintiff refers to Lee-Elza and Mitchell in her responses to Aneton's motion for summary judgment (Docket Entry No. 57-58, ¶ 20; No. 59-

---

[2] Anteon has failed to comply with LR7.03(a), Local Rules of Court which requires that "[a]ll exhibits to pleadings shall be paginated progressively beginning with the principal document, and continuing through the last page of the document, including exhibits." The page numbers referred to herein are the original page numbers that appear on the documents attached as exhibits.

5

60), asserting in the case of Mitchell that she actually spoke with her, the plaintiff has failed to provide any affirmative evidence, *i.e.*, the deposition of either Lee-Elza or Mitchell, that would cast doubt on Aneton's claim that Lee-Elza was intended to replace the plaintiff only temporarily until Mitchell returned from leave.[3] In other words, the plaintiff has failed to provide any evidence that the person <u>actually</u> intended as her replacement was not another African-American Woman.

As shown, *supra* at p.4, there are two ways to establish the fourth element of a *prima facie* case of race discrimination. Anteon has addressed only one. The other way to establish the fourth element requires the plaintiff to show that she was treated differently from similarly-situated persons who were not part of the protected class.

At her deposition, the plaintiff testified initially that she knew of other employees against whom the customer had lodged complaints. (Docket Entry No. 50, Ex. 1, p. 113) The plaintiff testified that the employee to whom she was referring was the "white female" previously identified, *supra* at p. 5, as Lee-Elza. The plaintiff later testified, however, that she did not know if Lee-Elza left, nor was she aware of anyone who, if the customer filed a complaint against them, had not been discharged.[4] (Docket Entry No. 50, Ex. 1, p. 114) In her response to Aneton's motion for summary judgment, the plaintiff repeats her later testimony at her deposition, *i.e.*, that she "was not in a

---

[3] The plaintiff asserts that she "asked Demetrice Mitchell for an affidavit pertaining to her employment dates and the agreement that she made with Edna O'Dell before she began working in the credentials office, and she refused. Her reason was that it could cost her her job." (Docket Entry No. 59) The question is not what Aneton's agreement was with Mitchell after the fact; the question is under what circumstances Lee-Elza was placed in the plaintiff's position.

In Docket Entry No. 59, the plaintiff also asks that Court "to obtain the employment[] records for Michell[e] Lee-Elza to establish when and why she was terminated and to prove that discrimination does exist in the credential[s] office." The record is devoid of any indication that the plaintiff sought to obtain this information through formal discovery. It is not for the district court to prosecute the plaintiff's case for her, nor is it the district court's place to obtain evidence sought by the plaintiff.

[4] The record shows that Juanita Joyner, employed by the Blanchfield Army Community Hospital – the customer – asked that the plaintiff not be continued in her position. (Docket Entry No. 50, Ex. 7)

6

position to know of the employment related issues surrounding another Anteon employee." (Docket Entry No. 57-58, ¶ 16) One conclusion can be drawn from the foregoing: The plaintiff has provided no evidence that she was subject to disparate treatment.

For the reasons explained above, the plaintiff has failed to make a *prima facie* showing of race discrimination. Although it would be appropriate to recommend at this juncture that Anteon's motion for summary judgment be granted, Anteon has provided the additional arguments required under *McDonnell Douglas Corp.'s* burden-shifting scheme in the event that the plaintiff is deemed to have made a *prima facie* showing of race discrimination.

### C. Aneton's Additional Arguments

Anteon offers a three-part argument in support of its motion for summary judgment in the event it is determined that the plaintiff has made a *prima facie* showing of race discrimination: 1) the plaintiff has no evidence that Aneton's reason for discharging her was not based on legitimate, nondiscriminatory reasons; 2) the plaintiff has no evidence that Aneton's reason for discharging her was a pretext for discrimination; and 3) Anteon is entitled to the "same actor" inference set forth in *Buhrmaster v. Overnite Transportation Co.*, 61 F.3d 461 (6th Cir. 1995).

### 1. Anteon's Reason for Discharging the Plaintiff

Anteon argues first that the plaintiff was discharged because of the difficulties she had using the computer, and that poor job performance ss a legitimate, nondiscriminatory reason to discharge an employee. (Docket Entry No. 49, ¶ II.D.2, pp. 5-6)

O'Dell's sworn declaration, provided by Anteon in support of its motion for summary judgment, shows that O'Dell counseled the plaintiff on her difficulties using the computer system. (Docket Entry No. 50, Ex. 2, ¶ 13, p. 3) In an "EMPLOYEE COUNSELING REPORT" signed by

7

the plaintiff on March 21, 2005, O'Dell wrote:

> Ms. Laurence has been observed by more than one individual having difficulty maneuvering through the basic computer screens. In doing an online training that is normally completed in less than 4 hours – she experienced multiple problems that <u>extended her training over several days</u>.

(Docket Entry No. 50, Ex. 1, Attach. Ex. 5)(underline in the original) In a memorandum dated April 15, 2005, Joyner – on behalf of the customer, Blanchfield Army Community Hospital – wrote the following to O'Dell:

> It is with regret that I request the temporary contract employee – Nanette Laurence not be continued in her current position . . . . Ms Laurence has had problems with utilizing the computer and the programs which we use. . . . We feel that someone with more knowledge of the hospital would be better suited for this position.

(Docket Entry No. 50, Ex. 1, Attach. Ex. 7)

In her deposition and response to the motion for summary judgment, the plaintiff admits that she had trouble navigating between windows during the initial HIPAA (Health Insurance Portability and Accountability Act) training, but maintains that two acting supervisors and four other employees also had trouble. (Docket Entry No. 50, Ex. 1, pp. 35-41, 45; No. 58-59, ¶¶ 8-9) Notwithstanding her claim, the plaintiff has offered no evidence, affirmative or otherwise, to show that her problems were no different than those that she claims were experienced by others, or that it took her longer to complete the online training course than others who were trained in its use. More particularly, although the plaintiff identifies six individuals whom she claims also had difficulties (Docket Entry No. 58-59, ¶ 8), including O'Dell and Joyner, the plaintiff has not provided an affidavit from any of the individuals – less O'Dell and Joyner – or any other proof, to support her claim that she was

not the only one who had problems.

Poor job performance is a legitimate, nondiscriminatory reason for discharging an employee. *Stockman v. Oakcrest Dental Center*, P.C., 480 F.3d 791, 802 (6th Cir. 2007)(citing *Majewski v. Automatic Data Processing Inc.*, 274 F.3d 1106 1116 (6th Cir. 2001). The plaintiff's unsubstantiated assertions that she had the same problems as others are insufficient to establish that Anteon did not have a legitimate, nondiscriminatory for discharging her. *See Lujan,* 497 U.S. at 888.

### 2. Pretext

Anteon argues next that the plaintiff cannot establish that its reason for discharging her was a pretext for discrimination. Anteon argues first that the plaintiff testified at her deposition that she knew of no employee who was permitted to remain on the job after the customer had filed a complaint against them and, as such, she cannot establish pretext on a theory of disparate treatment; and second, that the plaintiff's subjective opinion about why she was discharged is legally insufficient to establish pretext. (Docket Entry No. 49, ¶ II.D.3, pp. 6-7)

As to Aneton's first argument, as previously discussed, *supra* at pp. 5-6, the plaintiff' has provided no evidence that she was treated differently from other similarly situated employees. Consequently, the plaintiff cannot establish pretext on grounds of disparate treatment.

Aneton's second argument pertains to the plaintiff's testimony at her deposition that Jane Russell, a federal employee who worked in quality assurance, began to talk with Joyner and O'Dell, turning them against her. (Docket Entry No. 50, Ex. 1, pp. pp. 46-47, 57, 95) The plaintiff testified that she "h[as] no idea" what Russell told Joyner and O'Dell, but that Joyner's and O'Dell's attitude toward her changed. (Docket Entry No. 50, Ex. 1, pp. 50-52, 114-115) Although the plaintiff testified at her deposition that Russell made negative remarks, the only example she provided was

an alleged remark "about how some women are just so scandalous and walk around in their night clothes all day long." (Docket Entry No. 50, Ex. 1, pp. 52-53) The plaintiff testified that she believed the remark was made about her because sometimes she would go to the mailbox in her pajamas. (Docket Entry No. 50, Ex. 1, pp. 53-54) The plaintiff repeats these general allegations in her response to the motion for summary judgment. (Docket Entry No. 57-58, ¶¶ 13, 15, 18-19)

A plain reading of the deposition shows that the plaintiff's race discrimination claim was based solely on her personal opinion and speculation. (Docket Entry No. 50, Ex. 1, pp. 46, 50-53, 57, 95, 112-113, 115, 121-122) When questioned, the plaintiff could not, or would not, provide any specifics. In fact, when afforded an opportunity to provide those details, she answered on one occasion, "I don't want to rehash all that," and on another, "I don't really want to go through all that." (Docket Entry No. 50, Ex. 1, pp. 50, 52) When pressed in the latter instance, the only specific example that the plaintiff provided was Russell's alleged remark about "some women . . . walk[ing] around in their night clothes all day long." (Docket Entry No. 50, p. 53)

Apart from conclusory allegations and her subjective beliefs, the plaintiff has provided no evidence of pretext. Conclusory allegations and subjective beliefs are insufficient to establish pretext. *See e.g., Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992)(collecting cases standing for the proposition asserted).

### 3. "Same Actor" Inference

Anteon argues finally that, under the "same actor" inference, the plaintiff cannot establish discriminatory intent. (Docket Entry No. 49, ¶ II.D.1, pp. 4-5)

Under the "same actor" doctrine, "[w]here the same person hires the employee and fires him within a short period of time . . . there is a strong contrary inference of discriminatory intent."

10

*Stockman*, 480 F.3d at 801 (citing *Buhrmaster*, 61 F.3d at 464 ("An individual who is willing to hire . . . a person of a certain class is unlikely to fire them simply because they are part of that class. This general principal applies regardless of whether the class is age, race, sex, or some other protected classification.")). However, in *Wexler v. White's Fine Furniture, Inc*., 317 F.3d 564 (6th Cir. 2003), the Sixth Circuit diminished the relevance of the "same actor" inference, holding that "where . . . the fact finder decides to draw the same-actor inference, it is insufficient to warrant summary judgment for the defendant if the employee has otherwise raised a genuine issue of material fact. *Id*. at pp. 573-774.

In her sworn declaration, O'Dell states that she "was responsible for interviewing and hiring" the plaintiff, and that she hired the plaintiff on February 20, 2005.[5] (Docket Entry No. 50, Ex. 2, ¶ 10, p. 3) O'Dell also states that it was she who discharged the plaintiff, and that she did so on April 19, 2005.[6] (Docket Entry No. 50, Ex. 2, ¶ 15, p. 4) Apart from the specific date that she was hired, discussed below at n. 5, the plaintiff does not dispute O'Dell's statements. (Docket Entry No. 50, Ex. 1, pp. 21-23)

Although this case was previously dismissed as to O'Dell (Docket Entry No. 46), the record shows that Aneton's liability derives from O'Dell's alleged discriminatory actions, actions that are imputed to Anteon through the dual common law doctrines of agency, *see Alexander v. Local 496, Laborers' Intern. Union of North America*, 177 F.3d 394, 409 (6th Cir. 1999), and *respondeat*

---

[5] The plaintiff asserts that she was hired on February 28, 2005, not February 20 as O'Dell states in her sworn declaration. (Docket Entry No. 59) It appears from the record that the plaintiff was, in fact, hired on February 28.

[6] The record shows that Anteon formally extended a job offer to the plaintiff by letter dated February 28, 2005 (Docket Entry No. 50, Ex. 3), and that Anteon formally discharged the plaintiff by letter dated April 19, 2005 (Docket Entry No. 50, Ex. 6). The letters were signed by Luanne Houck and Karen Dickman respectively, both Vice Presidents of Anteon.

11

*superior*, *see McDowell v. Krawchison*, 125 F.3d 954, 961-962 (6th Cir. 1997). Because Aneton's liability derives from O'Dell's alleged actions, analysis under the "same actor" inference with respect to Anteon turns on an analysis of O'Dell's actions.

The record shows that O'Dell hired <u>and</u> fired the plaintiff, and that she did so within a time frame of less than two months. Given that the plaintiff's protected classification as an African-American woman did not change during that brief period, and given that, as previously established *supra* at pp. 5-10, the plaintiff has failed to establish that a genuine issue of material fact exists, the "same actor" inference applies to Anteon.

As reasoned above, no discriminatory intent may be inferred from O'Dell's actions in firing the plaintiff under the "same actor" inference. For reasons stated above, that inference is imputed to Anteon.

### D. Conclusion

As reasoned herein, the plaintiff has failed to establish a *prima facie* case of race discrimination; she has failed to show that Anteon did not have a legitimate, nondiscriminatory reason for discharging her; and she has failed to establish that the reason for her discharge was a pretext for discrimination. Anteon also is entitled to the "same actor" inference. For these reasons, Anteon is entitled to judgment as a matter of law.

### III. RECOMMENDATION

For the reasons explained above, the undersigned **RECOMMENDS** that Anteon's motion for summary judgment (Docket Entry No. 48) be **GRANTED**, and that this action be **DISMISSED** with prejudice.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from

12

Case 3:06-cv-00637   Document 61   Filed 01/25/08   Page 12 of 13 PageID #: 277

receipt of this Report and Recommendation within which to file with the District Court any written objections to the proposed findings and recommendations made herein.  Any party opposing shall have ten (10) days from receipt of any objections filed regarding this Report within which to file a response to said objections.  Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation may constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

    **ENTERED** this the 25th Day of January, 2008.

_____
Joe B. Brown
United States Magistrate Judge